## H. C. MOORE *v.* R. H. McGAHA.

### October Term, 1877.

CHANCERY HAS NO JURISDICTION TO REVISE THE JUDGMENT OF A COURT OF LAW.—Equity has no power to revise the proceedings or judgment of a court of law merely upon the ground of supposed or even actual error; and, therefore, if a bill filed after judgment at law, to obtain the benefit of legal defences to the legal demand, show on its face that the complainant had the opportunity of making these defences in the suit at law, and, *a fortiori*, if it shows that he did actually make them, it is demurrable.

*Helms*, for complainant.

*Gaut, Osment & Gaut*, for defendant.

THE CHANCELLOR: — On demurrer. Under a written contract, signed by both parties, the defendant agreed to build the brick-work of a house for the complainant at the price of $9 per 1,000 brick, to be counted in the wall, in the usual way of measurement, when the work was finished, and the complainant was to pay the amount in certain instalments. The work having been partially done, but in a manner not satisfactory to the complainant, the parties, on January 24, 1873, entered into another written agreement, by which the defendant undertook to complete the house, " and to repair and make satisfactory all parts of the work " he had originally agreed to do, " finishing up the whole job in a workmanlike manner ;" the work to be done by June 1, 1873. " After the job was completed," says the bill, the defendant presented his account for the balance claimed to be due him, and complainant refused to pay him any more money, " because he had failed to do his job in a workmanlike manner, and with good materials, as he had contracted to do ;" and, after some delay, defendant sued complainant in the Circuit Court of Davidson County, " for the balance he claimed to be due him, to which complainant did not plead set-off, cross-action, or recoupment for damages." He did, however, appear and defend, — though the nature of the defence is not stated, — and offered testimony touching the claim of one Robinson, a carpenter, for work on the building, rendered necessary by the repairs of the defendant under his second contract, and which claim, the complainant then and now insists, the defendant had assumed to pay. This evidence was objected to by the defendant, and excluded by the court; and complainant excepted " and made his bill of exceptions upon this and other points." The jury found a verdict in favor of the defendant against the complainant for $———, upon which judgment was ren-

dered; and this judgment, upon appeal to the Supreme Court, was affirmed in the early part of this year. The present bill was filed, on May 5, 1877, to enjoin the execution issued upon this judgment, on the ground that the work had not been done according to contract; that the defendant had recovered for more brick than was actually put into the building; that complainant had since been sued by Robinson upon his claim for said carpenter's work, and judgment recovered thereon against complainant, and that defendant was totally insolvent. The defendant has demurred separately to that part of the relief based upon the Robinson claim, and filed another demurrer to the residue of the bill. The cause assigned in the latter demurrer is that there has been a trial at law touching these matters, in which complainant had full opportunity to make defence.

The learned counsel for the complainant has not seriously insisted upon the matters of his bill outside of the Robinson claim. No principle of law is better settled in this state, or more uniformly acted upon by the courts, than that a party will not be aided by a court of chancery, after a trial at law, unless he can impeach the justice of the verdict on grounds of which he could not have availed himself at law, or of which he was prevented from availing himself by fraud or accident, or the act of the opposite party, unmixed with negligence or fault on his part. *Kearney* v. *Smith*, 3 Yerg. 127, and cases cited in the head-note of the new edition. Omitting the allegations of the bill touching the Robinson claim, the defences now relied on by the complainant are that the defendant's work had not been done according to the contract, and that the defendant had recovered for more brick than was actually put into the building. But the number of brick used in the building was, necessarily, the foundation of the defendant's action "for the balance" of the contract price he claimed to be due him, the contract expressly stipulating for the price of $9 per 1,000 brick, "to be counted in the wall when the work was finished."

There could be no recovery, either upon the contract or a *quantum meruit*, except for a certain number of brick, at the stipulated price. So, also, the defendant undertook to complete the brick-work of the house, " to repair and make satisfactory all parts of the work, finishing up the whole job in a workmanlike manner." No recovery, it is clear, could be had on the contract unless it was executed in conformity with the stipulations ; and if the contract were considered as abandoned, the recovery could only be for the actual benefit conferred upon the defendant. And to this end the general issue was sufficient, without special pleading. *Porter* v. *Woods*, 3 Humph. 56. The defences now relied on were, therefore, necessarily involved in the suit at law ; and the complainant, having had full opportunity to make them in that suit, is clearly precluded from coming into equity upon them. The judgment of the court of law, however unsatisfactory it may be to the complainant or his learned counsel, is conclusive upon me. The demurrer under discussion must, consequently, be sustained.

The Robinson claim is thus explained by the bill : Robinson was employed by the complainant to do the carpenter's work on the building, and, in order to enable the defendant to repair his brick-work under the second contract, it became necessary to take down a portion of the carpenter's work, to which Robinson objected, " unless he was to be paid his full price therefor ; and the defendant agreed to this, and said he would bear the loss." Robinson insists that he did not consent to this unless the complainant would become responsible for the payment of the work " to be torn down." The evidence offered on the trial of the defendant's suit, touching this claim, was that Robinson had notified complainant that he would look to him for the price of the work, and the court sustained the objection of the defendant to this testimony upon the ground " that it had not then been judicially determined that complainant would be liable for said debt to said Robinson."

The complainant says that he has since been made liable by the recovery of judgment against him by Robinson, and ought, in equity, to have a deduction from the recovery at law to that extent. The defendant demurs to that part of the bill, because that question has been adjudicated at law, or might have been; because the contract between the complainant and defendant was in writing, and cannot be added to or altered by parol; and because the defendant's promise, if made, was within the Statute of Frauds.

The statement of the bill, taken literally, is certainly that Robinson was to be paid his full price for that portion of the carpenter's work which it became necessary to take down in order to enable the defendant to "repair" his brick-work. In that view, it was work for which the complainant was primarily liable under his contract with Robinson to do the carpenter's work, and the defendant's promise to pay for it would be within the Statute of Frauds. The promise would equally be within the statute if it had been to pay for future carpenter's work, rendered necessary by the tearing down of the wall, if such work was included in the contract between complainant and Robinson, and the complainant was primarily liable for it. If, however, the complainant's contract only covered the work already done, and there was no stipulation between him and the carpenter for the costs of tearing down and replacing, then a promise by the defendant to pay the expenses of such tearing down and replacing, or to give the complainant a credit for the same on the amount due the defendant for brick-work, would not be within the statute. So, if the defendant had been compelled, in the execution of his written contract to repair, to take down a portion of the carpenter's work for which the complainant had already paid, or was bound to pay, he would certainly be liable to the complainant for the loss thus sustained, precisely as he would be liable for any other damage done by him in repairing his work according to contract. The Statute of Frauds would have nothing to

do with such damages, nor would it make any difference whether the complainant had paid, or had become liable to pay, voluntarily or by compulsion of law, the carpenter for such work. In this view, too, the costs of tearing down and replacing would fall within the defendant's written undertaking "to repair and make satisfactory all parts of the work," and it would not be adding to or altering the terms of the writing to hold the defendant liable for the loss thus occasioned.

The only question, then, is, Was this matter adjudicated in the suit at law, or might it have been brought into that suit, so as to preclude the complainant from relying on it in this court after a trial at law? And, clearly, any damages sustained by the complainant by reason of the failure of the defendant to do the brick-work properly, as originally stipulated, would go to reduce the defendant's recovery for such work. They would be special damages, which the complainant would be allowed by way of recoupment against the defendant's demand. *Bush* v. *Jones*, 2 Tenn. Ch. 190. And this, as we have seen, under the general issue. *Porter* v. *Woods*, 3 Humph. 61. For the defendant in such a suit is entitled to insist, in abatement, upon just such damages as in a cross-action he would have recovered. And if it be conceded that the complainant was not bound to insist upon such a defence, and might thereafter bring a separate suit for the damage, yet his bill shows that he did actually offer evidence upon the subject, which the court excluded, not because the complainant was not entitled to make the defence, but upon a different ground altogether. The ruling of the circuit judge seems to have been sustained by the Supreme Court, but whether it was right or wrong is of no consequence. This court has no power to revise the proceedings of the court of law. If it appears that a party has had the opportunity to make a legal defence, and has actually made it, he cannot re-litigate the matter in this court, even if the decision at law was clearly erroneous.

So far as the bill shows, the issues at law enabled him to make the defence. If it were otherwise, it was incumbent upon him to show the fact. Every presumption is in favor of the regularity of the legal proceedings. The demurrers are sustained, and the bill dismissed with costs.